Henry S. David (SBN 89297)
hdavid@davidfirm.com
THE DAVID FIRM®
617 W. 7th St., Suite 702
Los Angeles, CA 90017
T: 213.550.4020  F: 213.550.4010

Andrew F. Kim (SBN 156533)
*akim@afklaw.com*
Law Office of Andrew F. Kim, Esq., P.C.
9018 Balboa Boulevard, Suite 552
Northridge, CA 91325
T: (818) 216-5288 F: (818) 993-3012

Attorneys for Plaintiff
HOWARD L. ABSELET

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD L. ABSELET, an individual and derivatively on behalf of ROOSEVELT LOFTS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>LEVENE, NEALE, BENDER, YOO & BRILL, LLP, a California limited liability partnership; ROOSEVELT LOFTS, INC., a California corporation; SIMON BARLAVA, an individual; CARLA RIDGE, LLC, a California limited liability company; HAMID JOSEPH NOURMAND, an individual; DORIS MORADZADEH, an individual; DESERT FIELD, LLC, a California limited liability company ; LEON NEMAN, individually and as trustee of LEON & FIROOZEH NEMAN FAMILY TRUST; JOHN NEMAN, individually and as trustee of JOHN & DEVORA NEMAN FAMILY TRUST; YOEL NEMAN, individually and as trustee of YOEL & MONIA NEMAN FAMILY TRUST; FNC-OKC I, LLC, an Oklahoma limited liability company; JOSHUA PARADISE HOLDINGS, LLC, a California limited liability company; FNC-OKC II, LLC, an Oklahoma limited liability company; HUDSON LABOR SOLUTIONS, INC., a | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF; ACTUAL FRAUDULENT TRANSFERS (TWO COUNTS); BREACH OF WRITTEN CONTRACT; CONVERSION; AND MONEY HAD AND RECEIVED; TORTIOUS INTERFERENCE WITH CONTRACT; SHAREHOLDER DERIVATIVE ACTION** |

California corporation; RODNEY
YASHOUAFAR, an individual;
RAYMOND YASHOUAFAR, an
individual; and DOES 1 through 10,
inclusive,

                    Defendants,

and

ROOSEVELT LOFTS, INC., a California
corporation,

                    Nominal defendant.

COMPLAINT FOR DECL. RELIEF, ACTUAL FRAUDULENT TRANSFERS, ETC.

Plaintiff Howard L. Abselet ("Plaintiff") alleges for his Complaint as follows:

## JURISDICTION, VENUE, AND PARTIES

1.     This Court has original jurisdiction over this matter under 28 U.S.C. § 1332 in that this is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, $75,000.

2.     Venue is proper in this District under 28 U.S.C. § 1391(a) because certain of the defendants reside in this District, and a substantial part of the events related to the claims occurred within this District.

## Plaintiff

3.     Plaintiff is a resident and a citizen of and domiciled in Port Jefferson Station, New York.  Plaintiff is a current shareholder of defendant Roosevelt Lofts, Inc. ("RLI") and has continuously held stock in RLI since April 29, 2015.

## RLI

4.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, defendant RLI is a corporation organized and existing under the laws of California, with its principal place of business in this District, and that RLI is owned, in part, by Plaintiff, as described more fully below.  Plaintiff is further informed and believes, and on that basis alleges, that RLI is the sole member of Roosevelt Lofts, LLC ("RLL"), a limited liability company organized and existing under the laws of the State of California.  RLI is also a nominal defendant in connection with Plaintiff's shareholder derivative claims set forth more fully below.

## The Yashouafars and Their Entity, Hudson

5.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant defendant Raymond Yashouafar ("Raymond")[1] was, and continues

---

[1]     Plaintiff uses first names to avoid confusion and not out of any disrespect.

to be a citizen and resident of the State of California, domiciled in this District. Raymond is the son of Solyman Yashouafar ("Solyman").

6.    Plaintiff is informed and believes, and on that basis alleges, that at all times relevant defendant Rodney Yashouafar ("Rodney") was, and continues to be, a citizen and resident of the State of California, domiciled in this District.  Rodney is the son of Solyman.

7.    Plaintiff is informed and believes, and on that basis alleges, that at times relevant defendant Hudson Labor Solutions, Inc. ("Hudson") is a corporation organized and existing under the laws of California, with its principal place of business in this District, and that Massoud Aaron Yashouafar ("Massoud"), Solyman, Rodney, and Raymond own the shares of Hudson.

## Barlava and His Entities

8.    Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, defendant Simon Barlava ("Barlava") was, and continues to be, a citizen and resident of the State of California, domiciled in this District.  Barlava is the son-in-law of Solyman.

9.    Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, Carla Ridge, LLC ("Carla Ridge") was and continues to be a limited liability company organized under the laws of California, with its principal place of business in this District.  Plaintiff is further informed and believes, and on that basis alleges, that all of the members of Carla Ridge are members of the Barlava family and their affiliates and are residents and citizens of the State of California, domiciled in this District.

10.    As discussed more fully below, Barlava claims to own shares of defendant, RLI.

## Nourmand, Moradzadeh and Desert Field

11.    Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, defendant Hamid Joseph Nourmand ("Nourmand") was, and

continues to be, a citizen and resident of the State of California, domiciled in this District.  Nourmand has been legal counsel to the Yashouafar family and their affiliates for at least 20 years and also is Plaintiff's cousin.  As, discussed more fully below, Nourmand claims to own shares of RLI.  Plaintiff does not sue Nourmand for any claims that Plaintiff released in the 2012 settlement agreement among Plaintiff, Nourmand, and others.

12.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, defendant Doris Moradzadeh ("Moradzadeh") was, and continues to be, a citizen and resident of the State of California, domiciled in this District. Plaintiff is further informed and believes, and on that basis alleges, that Moradzadeh is Nourmand's wife.  Moradzadeh also claims to own shares of RLI.

13.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, Desert Field, LLC ("Desert Field") was, and continues to be, a limited liability company organized under the laws of California, with its principal place of business in this District.  Plaintiff is further informed and believes, and on that basis alleges, that all of the members of Desert Field were and are members of the Nourmand and Yashouafar families and their respective affiliates and are residents and citizens of the State of California, domiciled in this District.

## The Nemans and Their Respective Entities

14.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, defendant Leon Neman was, and continues to be a citizen and resident of the State of California, domiciled in this District.

15.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, defendant John Neman was, and continues to be a citizen and resident of the State of California, domiciled in this District.

16.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, defendant Yoel Neman was, and continues to be a citizen and resident of the State of California, domiciled in this District.  Defendants Leon

Neman, John Neman, and Yoel Neman are brothers; in this Complaint, Plaintiff sometimes refers to them collectively as the "Neman brothers."

17.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, defendant Joshua Paradise Holdings, LLC ("JPH") was, and continues to be, a limited liability company organized under the laws of California, with its principal place of business in this District.  Plaintiff is further informed and believes, and on that basis alleges, that the members of JPH are the following:

(A)     Leon & Firoozeh Neman Family Trust, whose trustee is Leon Neman;

(B)     John & Devora Neman Family Trust, whose trustee is John Neman; and

(C)     The Yoel & Monia Neman Family Trust, whose trustee is Yoel Neman.

In the event such trusts were formed as statutory or business trusts, upon information and belief, no beneficiaries thereof are citizens of the State of New York.  The three family trusts, the Neman brothers and JPH are sometimes referred to herein collectively as the "Neman Defendants."

18.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, defendant FNC-OKC I, LLC ("FNC-OKC I") was, and continues to be, a limited liability company organized under the laws of Oklahoma, with its principal place of business in Oklahoma.  The Neman brothers assert that they, their relatives, and/or their entities own and control FNC-OKC I, which Massoud, Solyman, Rodney and Raymond deny, asserting, instead, that they, their relatives, and/or their entities own and control FNC-OKC I.

19.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, defendant FNC-OKC II, LLC ("FNC-OKC II") was, and continues to be, a limited liability company organized under the laws of Oklahoma, with its principal place of business in Oklahoma.  Plaintiff is further informed and believes, and on that basis alleges, that Massoud, Solyman, Rodney, and Raymond and their

relatives and/or affiliates own and control FNC-OKC II, which the Neman brothers deny, asserting instead that they, their relatives, and/or their entities own and control FNC-OKC II.

## Levene Neale

20.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant, Levene, Neale, Bender, Yoo & Brill, LLP ("Levene Neale") was, and continues to be, a limited liability partnership organized and existing under the laws of the State of California, with its principal place of business in this District. Plaintiff is further informed and believes, and on that basis alleges, that none of the partners in Levene Neale are citizens of or domiciled in the State of New York.

## Doe Defendants

21.     Plaintiff does not know the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants that Plaintiff sues in this Complaint as Does 1 through 10, inclusive (collectively, the "Doe Defendants," and together with all other defendants other than RLI in its capacity as a nominal shareholder derivative defendant, "Defendants"), and, therefore, sues the Doe Defendants by these fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities of the Doe Defendants when Plaintiff ascertains those true names.  Plaintiff is informed and believes, and on that basis alleges, that the Doe Defendants, and each of them, are responsible in some manner for the acts and omissions that Plaintiff alleges in this Complaint and that the conduct of the Doe Defendants, and each of them, proximately caused Plaintiff's damages as alleged in this Complaint.

## Agency Relationship among the Defendants

22.     Plaintiff is informed and believes, and on that basis alleges, that at all relevant times, each of the Defendants was the agent and employee of each of the remaining Defendants and in doing the things alleged hereinbelow, was acting within the scope of such agency.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### The Fraud

23.     Plaintiff was a healthy businessperson in New York when he contracted bacterial meningitis while undergoing minor surgery.  As a result of the infliction of that disease, he suffered a series of strokes, which has left him partially paralyzed and bed bound for long periods, and has required approximately 20 surgical procedures.  As a result of that incident, Plaintiff received a substantial monetary settlement on which he is dependent to provide for himself and his family, as the disease has taken away his ability to make a living.

24.     Beginning in September 2008, Plaintiff loaned to Massoud Aaron Yashouafar ("Massoud"), his brother, Solyman Yashouafar ("Solyman," and together with Massoud, the "Judgment Debtors"), and Alliance Lending Group, Inc. ("ALG"), an affiliate of the Judgment Debtors, and a judgment debtor itself (collectively with the Judgment Debtors, "Borrowers"), a total of $6,000,000, and the Judgment Debtors unconditionally guaranteed repayment of the loan.

25.     Commencing June 2010, the Borrowers failed to pay the sums due under the Loan Agreement.

### The Judgment against the Judgment Debtors

26.     By reason of the foregoing, on or about January 27, 2011, Plaintiff commenced the action entitled *Howard L. Abselet v. Allied Lending Group, Inc. et al.*, Case No. 2:11-CV-00815-JFW(JEMx).

27.     By an agreement dated February 10, 2012, Plaintiff, the Borrowers, and Nourmand entered into a settlement of that action, as among them.

28.     As one of the inducements to Plaintiff to enter into the Settlement Agreement, the Judgment Debtors, by and through Levene Neale, informed Plaintiff that RLI owned 100% of Roosevelt Lofts, LLC ("RLL"), then an affiliate of the Judgment Debtors, as discussed more fully below.

29.     In and pursuant to the Settlement Agreement, among other things, the Judgment Debtors, as record and/or beneficial shareholders, directly or indirectly, of RLI, the managing member of RLL, executed and delivered irrevocable instructions to Levene Neale, RLL's counsel and the custodian of the Class Action Reserve (the "Irrevocable Instructions"), to cause sums in the Class Action Reserve to be directly disbursed to Plaintiff to repay the amount owed by Borrowers to Plaintiff, which Instructions Levene Neale admits having received by April 6, 2012.  Plaintiff attaches a true copy of the Irrevocable Instructions as Exhibit "1" to this Complaint and incorporates its terms in this Complaint as though fully set forth**.**

30.     RLI and Levene Neale breached the Irrevocable Instructions by disbursing moneys to or for the benefit of the Judgment Debtors and the Defendants in a manner not consistent with the Irrevocable Instructions to Levene Neale.

31.     By reason of the breaches by the Borrowers of their obligations under the Settlement Agreement, the Court entered a series of judgments against them in the above-described action, culminating in a Second Amended Judgment (the "Judgment") on or about August 10, 2012 (Docket No. 477).  Plaintiff attaches a true copy of the Judgment as Exhibit "2" to this Complaint.

## **Plaintiff Acquires Judgment Debtors' Interests in RLI, Alliance Property Investments, Inc. and ECP Building, Inc.**

32.     On or about January 29, 2015, Plaintiff took steps to levy on and have the United States Marshal sell the Judgment Debtors' stock in RLI, Alliance Property Investments, Inc. ("APII") and ECP Building, Inc. ("ECP Building"). APII, RLI and ECP Building are collectively, the "Corporations."

33.     On April 29, 2015, the United States Marshal for the Central District of California held an execution sale (the "Execution Sale") of the Judgment Debtors' interests in the Corporations.  Plaintiff was the successful bidder at that

Execution Sale as to all items to be sold at the Execution Sale. The Judgment Debtors' position on these issue have changed over time, but they have affirmed that they owned, as of the Execution Sale, between 46.73% and 93.46% of RLI. With respect to APII and ECP Building, the Judgment Debtors had engaged in fraudulent transfers/sham transactions in an attempt to appear to divest themselves of ownership in those entities prior to and after the Execution Sale, but the Judgment Debtors (as well as the putative transferees, one or more of their children) have since stipulated that the alleged transfers are void *ab initio*, thereby confirming Plaintiff's 100% ownership of these entities after the Execution Sale.

## The Improper Transfers

## The RLI Reserve

34.     Plaintiff is informed and believes, and on that basis alleges, that RLL is a limited liability company organized and existing under the laws of the State of California. Plaintiff is further informed and believes, and on that basis alleges, that (A) RLI is, and at all times relevant was, the sole member of RLL, (B) the Judgment Debtors were 46.73% shareholders in RLI until they acquired Barlava's shares in RLI, at which time the Judgment Debtors became 93.46% shareholders in RLI (a transaction that, upon information and belief, Barlava now contests), and (C) Plaintiff purchased all of the Judgment Debtors' shares in RLI at the Execution Sale. Plaintiff is informed and believes, and on that basis, alleges that, presently, Moradzadeh and Nourmand contend that they own shares in RLI. Barlava's position on his and his affiliates' ownership of shares in RLI has changed over time.

35.     On or about April 13, 2009, RLL filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1 *et seq.*), commencing that bankruptcy case entitled *In re Roosevelt Lofts, LLC*, Case No. 1:09-BK-14214-GM, in the United States Bankruptcy Court for the Central District for California, San Fernando Valley Division (the "RLL Bankruptcy").

36.     On or about July 6, 2011, the Court hearing the RLL Bankruptcy (the "RLL Bankruptcy Court") entered an order (the "Confirmation Order") confirming the Second Amended Chapter 11 Plan of Reorganization (Dated June 20, 2011), as Modified (the "Plan").

37.     The Plan requires the establishment and maintenance of (A) a "Class Action Reserve," also referred to as the "Mechanics Lien Reserve," in the amount of $16,000,000 or such other sum as the RLI Bankruptcy Court authorized, for the purpose of satisfying all Allowed Mechanics' Lien Claims (as those terms are defined in the Plan), and (B) other reserves for particular claims made against the estate in the RLL Bankruptcy.  Pursuant to the Plan, the Class Action Reserve was to be deposited into a segregated interest-bearing account that Levene Neale established, maintained, and maintains as custodian.

38.     The Plan expressly permits the custodian of the Class Action Reserve to disburse funds from that Reserve _only_ to (a) claimants of Allowed Mechanics' Lien Claims in the RLL Bankruptcy (and their class action counsel) or (b) directly to or for the benefit of RLI, RLL's sole member.  The Plan and the Confirmation Order afford no discretion to the custodian to make disbursements or distributions not expressly permitted by the Plan, to make them to a payee or in a manner not expressly permitted by the Plan or to otherwise proceed outside the confines of the Plan.

39.     The Plan sets a "Class Action Reserve Threshold Amount" (as that term is defined in the Plan) for the benefit of Allowed Mechanics' Lien Claimants to ensure sufficient funds will be available in the Class Action Reserve to pay them and further expressly provides that to the extent there are funds in custody in excess of the Class Action Reserve Threshold Amount such excess is to be distributed "to RLI." or "as part of the RLI Payment."  The Plan defines "RLI Payment" as a payment to RLI, and expressly provided that to the extent there are funds in custody in excess of the "Class Action Reserve Threshold Amount," such

excess is to be distributed "to RLI" or "as part of the RLI Payment."  The Plan defines "RLI Payment" as a payment to RLI.

40.     As alleged (¶ 29, *supra*), the Irrevocable Instructions, executed by the Judgment Debtors as record and/or beneficial shareholders, directly or indirectly, of RLI, the managing member of RLL, required RLI and RLL's counsel, Levene Neale, the custodian of the Class Action Reserve, to cause the sums in the Class Action Reserve to be directly disbursed to Plaintiff consistent with the Irrevocable Instructions.

41.     Levene Neale was obligated to disburse certain funds from the Class Action Reserve to Plaintiff in accordance with the Plan, the Settlement Agreement, and the Irrevocable Instructions.

44.     On November 1, 2012, Levene Neale emailed Plaintiff's prior counsel, Steptoe & Johnson, LLP ("Steptoe"), stating that a distribution was about to be made to Plaintiff from the Class Action Reserve in the amount of $42,221.04 in accordance with the Irrevocable Instructions.  The following day, Levene Neale emailed Steptoe asking Steptoe to disregard the prior day's email because Levene Neale had "not been authorized to make any distributions from the Roosevelt Class Action Reserve on account of the Yashouafars' interest in RLI."  Levene Neale has not made a distribution to Plaintiff from the Class Action Reserve.

42.     Levene Neale confirmed to the Bankruptcy Court that, as of the date(s) of the distributions from the Class Action Reserve at issue in this action and described more fully below, *all* Allowed Mechanics' Lien Claims had been paid.

### The Capmark Mortgage

43.     Plaintiff is informed and believes, and on that basis alleges, that on or about January 18, 2007, Barlava caused First National Building II, LLC, an

Oklahoma limited liability company ("FNB II"), to be formed, and was the majority owner of that entity, either directly or through affiliates.[2]

44.     Plaintiff is informed and believes, and on that basis alleges, that on or about May 4, 2007, Carla Ridge and APII purchased an iconic downtown Oklahoma City office building complex, known as the First National Center, and that Capmark Bank and Capmark CDF Subfund VI LLC (together, "Capmark") later loaned $23,080,000 to First National Building I, LLC ("FNB I"), an Oklahoma limited liability company formed by the Judgment Debtors, and FNB II to finance the purchase of the property (the "Loan"), securing the Loan by a mortgage encumbering the First National Center.  Plaintiff is further informed and believes, and on that basis alleges, that Massoud and Barlava each guaranteed portions of the Loan, and the parties then placed title in the First National Center into the two special purpose entities, FNB I and FNB II, the first then controlled by the Judgment Debtors and the second then controlled by Barlava.

45.     Plaintiff is informed and believes, and on that basis alleges, that prior to and at the time the Judgment was entered, FNB I owned a fifty percent (50%) undivided interest in the First National Center and that between May 2007 and mid-October 2012, FNB I and FNB II owned equal shares of the First National Center.  (On information and belief, FNB II is currently owned by FNB I.)

46.     Plaintiff is informed and believes, and on that basis alleges, that due to non-payment of the mortgage, Capmark commenced an action for judicial foreclosure in the District Court for the County of Oklahoma.  Ultimately, the

---

[2]     In paragraphs 43 through 48, Plaintiff describes transfers that are already the subject of litigation pending in the United States District Court for the Western District of Oklahoma in *Abselet v. Alliance Lending Group, et al.,* Case No. FJ-14-00004-F, the Honorable Judge Stephen P. Friot presiding (the "OK Action"). Plaintiff does not seek adjudication in this action of any issues currently pending in the OK Action, including the nature of validity of the alleged transfers of ownership positions in the First National Center, or in entities that claim to own positions in that property, as described in these paragraphs.

parties settled that action in or around February, 2012 on the following terms, in relevant part:  (a) the mortgage on the First National Center would be satisfied in exchange for a release price equal to 52¢ for each dollar borrowed; (b) the settlement would close no later than May 27, 2012, time being of the essence; and (c) the borrowers under that mortgage would pay a nonrefundable $1,000,000 deposit by no later than February 28, 2012.

47.     In mid-October 2012, in exchange for a purported "purchase price" of $5.3 million, the Judgment Debtors, the Barlava Defendants, and the Neman Defendants did voluntarily, knowingly, and willfully cause certain sham deeds and other documentation to be executed, which deeds purported to convey title of the First National Center first to JPH, and, shortly thereafter, to FNC-OKC I and FNC-OKC II.  Plaintiff is further informed and believes, and on that basis alleges, that although such transactions were documented as a sale to JPH, such transactions were, in fact, a hard-money loan, with the Judgment Debtors and/or entities that they controlled being permitted to "buy back" First National Center by repaying the loan, with usurious interest.

48.     Plaintiff is further informed and believes, and on that basis alleges, that FNB I and FNB II still own the First National Center, that the First National Center is currently under contract for sale for $23,000,000, and that the Court in the OK Action has directed that the proceeds from the sale be placed into escrow subject to the Court's rulings in the OK Action.

### The Improper Disbursements from the Class Action Reserve

49.     Plaintiff is informed and believes, and on that basis alleges, that, notwithstanding and in direct violation of the provisions of the Plan, the Settlement Agreement, and the Irrevocable Instructions, Levene Neale, at the direction of the Defendants (as well as their respective affiliated entities), commenced making distributions from the Class Action Reserve and ignored the Irrevocable Instructions, of which Levene Neale and certain of the other Defendants had notice

or knowledge.  Specifically, Levene Neale disbursed from the Class Action Reserve at least $6,454,033.89 for the direct benefit of RLI and the other Defendants.  Among others, such distributions were made to Capmark, Berkadia Commercial Mortgage LLC, Silver Arch Capital Partners, LLC, Carla Ridge, Nourmand, Moradzadeh, Desert Field, Hudson, Lesnick & Prince, LLP, JAMS, Hamrick & Evans, LLP, Law Offices of Homan Taghdiri, Levene Neale, Brandon Loan Services, Inc., and Midland Loan Services.  The Defendants caused such distributions to be paid for purposes not permitted by the Plan, the Irrevocable Instructions, or the Settlement Agreement.  Among the improper distributions, certain Defendants caused distributions to be made totaling at least $4,350,000.00 to Capmark (or its servicer Berkadia) in connection with the settlement of the foreclosure action for the First National Center.  In addition, certain Defendants caused distributions totaling at least $1,000,000.00 to Carla Ridge as the return on or of equity in real estate investments made jointly with the Judgment Debtors. RLI caused distributions to be made to cover the Judgment Debtors' litigation costs in other actions and matters.

50.    Plaintiff is informed and believes, and on that basis alleges, that Levene Neale made, and the other Defendants caused Levene Neale to make, these disbursements with the intention to assist RLI with avoiding their obligation to pay Plaintiff monies from the Class Action Reserve in violation of Plaintiff's rights under the Settlement Agreement, the Judgment, and the Irrevocable Instructions, so that the alleged obligations of the Judgment Debtors to the Defendants would be paid before the Judgment Debtor's obligation to Plaintiff was satisfied.

## FIRST CLAIM FOR RELIEF

### (Against All Defendants for Declaratory Relief)

51.     Plaintiff realleges and incorporates by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 50, inclusive, of this Complaint.

52.     An actual controversy, therefore, has arisen between Plaintiff, on the one hand, and the Defendants, on the other hand, regarding the rights and the obligations of the parties.

53.     Plaintiff contends that the Transfers violated the terms of the Irrevocable Instructions and the Plan, were actual and/or constructive fraudulent transfers, and must be avoided.

54.     Plaintiff is informed and believes, and on that basis alleges, that the Defendants, and each of them, contend that the Transfers did not violate the terms of the Irrevocable Instructions or the Plan, were not fraudulent transfers, and therefore need not be avoided.

55.     Plaintiff contends that the Judgment Debtors were 46.73% shareholders in RLI until (A) they acquired Barlava's shares in RLI, at which time, the Judgment Debtors became 93.46% shareholders in RLI (a transaction that, upon information and belief, Barlava now contests), and (B) Plaintiff purchased all of the Judgment Debtors' shares in RLI (93.46%) at the Execution Sale. (Plaintiff's ownership of all of the Judgment Debtors' former interest in RLI has already been adjudicated in Plaintiff's favor by this Court and is among other issues currently on appeal in the Ninth Circuit; Plaintiff seeks here a declaration and decision as to Plaintiff's percentage ownership interest in RLI after the Execution Sale).

56.     Plaintiff is informed and believes, and on that basis alleges, that Barlava now contends that he never sold his interest in RLI to the Judgment Debtors, and that the Judgment Debtors have taken inconsistent positions

concerning the size of their interest in RLI immediately prior to the Execution Sale.

57.     Plaintiff, therefore, seeks a judicial determination that the Transfers violated the terms of the Irrevocable Instructions, and the Plan, were fraudulent transfers, and must be avoided.  Plaintiff also seeks a judicial determination that, as of the Execution Sale, the Judgment Debtors owned 93.46% of RLI, Barlava owned none, and the size of the interest in RLI Plaintiff acquired at the Execution Sale was 93.46%.

## SECOND CLAIM FOR RELIEF

### (Against All Defendants for Actual Fraudulent Transfers—
### Cal. Civ. Code § 3439.04(a)(1))

58.     Plaintiff realleges and incorporates by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 50, inclusive, of this Complaint.

59.     Plaintiff is informed and believes, and on that basis alleges, that RLI caused the Transfers to be made to, and/or with the assistance of, their co-Defendants, and each of them, and/or to others, with Plaintiff having commenced this action within four (4) years of the Transfers.

60.     Plaintiff is informed and believes, and on that basis alleges, that RLI and/or its co-Defendants made the foregoing Transfers with the actual intent to hinder, delay, or defraud Plaintiff.

61.     Plaintiff is informed and believes, and on that basis alleges, that the Defendants, and each of them, conspired to make, to facilitate, and/or to participate in the Transfers; that at the time that such Defendants so conspired, they knew that RLI was indebted to various creditors, and that the Transfers actually and wrongly would hinder, delay, or defraud RLI's creditors, including Plaintiff; and that the Defendants conspired to make, facilitate and/or participate in such Transfers with

the intent to frustrate the efforts, rights, and remedies of the creditors, including Plaintiff, of RLI to collect the monies owed them.

62.    Plaintiff is informed and believes, and on that basis alleges, that the Defendants other than RLI substantially assisted RLI with the Transfers and/or encouraged RLI to make the Transfers knowing that RLI was indebted to Plaintiff, and knowing that the Transfers actually and wrongly would hinder, delay, or defraud RLI's creditors, and, specifically, Plaintiff.

63.    The Transfers have many, if not all, of the "badges of fraud" under California Civil Code section 3439.04(b), including but not limited to the following:

(A)    Plaintiff is informed and believes, and on that basis alleges, that many of the Transfers were made to or the benefit of insiders, including but not limited to entities and individuals affiliated with RLI;

(B)    Plaintiff is informed and believes, and on that basis alleges, that RLI and Levene Neale, among others, failed to disclose, and/or actually concealed, certain of the Transfers, including filing post-confirmation reports in the RLL bankruptcy that failed to disclose the Transfers;

(C)    Plaintiff is informed and believes, and on that basis alleges, that before the Transfers were made, RLI and its affiliates were threatened with litigation, whether by Plaintiff or by others;

(D)    Plaintiff is informed and believes, and on that basis alleges, that the Transfers, collectively, were of substantially all of RLL's assets, and indirectly substantially all of RLI's assets because RLI's membership in RLL was RLI's primary asset;

(E)    Plaintiff is informed and believes, and on that basis alleges, that the proceeds of the Transfers were absconded with;

(F)    Plaintiff is informed and believes, and on that basis alleges, that RLI removed and concealed assets; and

(G)   Plaintiff is informed and believes, and on that basis alleges, that RLI did not receive reasonably equivalent value for certain of the Transfers.

64.   As a direct and proximate result of the Transfers, Plaintiff has been damaged in an amount Plaintiff shall prove at trial, which amount is at least the total value of the cash, the property, and the property interests transferred.

65.   By reason of the foregoing conduct, the interests, if any, of any of the Defendants in any of the property of RLI or any property that RLI purported to transfer should be equitably subordinated to the interest, current or future, of Plaintiff in such property.

66.   The conduct of the Defendants alleged above constitutes a series of intentional acts that the Defendants did with the intention of depriving Plaintiff of property or legal rights or otherwise causing his injury, and was despicable conduct that subjected Plaintiff to unjust hardship in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages against the Defendants, and each of them.

67.   The wrongful conduct of the Defendants alleged above presents a continuing threat to Plaintiff, in that the Defendants persist and continue to engage in that conduct, transferring the purportedly former assets of RLI again and again, all to Plaintiff's detriment, and will not cease doing so unless and until this Court orders them to cease such conduct.  The Defendants' conduct is causing, and will continue to cause, irreparable injury to Plaintiff unless this Court enjoins or restrains the Defendants from such conduct.

### <u>THIRD CLAIM FOR RELIEF</u>

**(Against All Defendants for Common Law Actual Fraudulent Transfers)**

68.     Plaintiff realleges and incorporates by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 50, inclusive, of this Complaint.

69.     Plaintiff is informed and believes, and on that basis alleges, that RLI caused the Transfers to be made to, and/or with the assistance of, of their co-Defendants, and each of them, and/or to others, with Plaintiff having commenced this action within seven (7) years of the Transfers.

70.     Plaintiff is informed and believes, and on that basis alleges, that each of RLI made the foregoing Transfers with the actual intent to hinder, delay, or defraud RLI's creditors, and, specifically, Plaintiff.

71.     Plaintiff is informed and believes, and on that basis alleges, that the Defendants, and each of them, conspired to make, to facilitate, and/or to participate in the Transfers; that at the time that such Defendants so conspired, they knew that RLI was indebted to various creditors, including Plaintiff, and that the Transfers actually and wrongly would hinder, delay, or defraud RLI's creditors, and, specifically, Plaintiff; and that RLI made such Transfers with the intent to frustrate Plaintiff's efforts, rights, and remedies to collect the monies RLI owed him.

72.     Plaintiff is informed and believes, and on that basis alleges, that the Defendants other than RLI substantially assisted RLI with the Transfers and/or encouraged RLI to make the Transfers knowing that RLI was indebted to Plaintiff, and knowing that the Transfers actually and wrongly would hinder, delay, or defraud RLI's creditors, and, specifically, Plaintiff.

73.     As a direct and proximate result of the Transfers, Plaintiff has been damaged in an amount Plaintiff shall prove at trial, which amount is at least the total value of the cash, the property, and the property interests transferred.

74.     By reason of the foregoing conduct, the interests, if any, of any of the Defendants in any of the property of RLI or any property that RLI transfers should be equitably subordinated to the interest, current or future, of Plaintiff in such property.

75.     The wrongful conduct of the Defendants alleged above presents a continuing threat to Plaintiff, in that the Defendants persist and continue to engage in that conduct, transferring the purportedly former assets of RLI again and again, all to Plaintiff's detriment, and will not cease doing so unless and until this Court orders them to cease such conduct.  The Defendants' conduct is causing, and will continue to cause, irreparable injury to Plaintiff unless this Court enjoins or restrains the Defendants from such conduct.

76.     The conduct of the Defendants alleged above constitutes a series of intentional acts that the Defendants did with the intention of depriving Plaintiff of property or legal rights or otherwise causing his injury, and was despicable conduct that subjected Plaintiff to unjust hardship in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages against the Defendants, and each of them.

## FOURTH CLAIM FOR RELIEF
### (Against Levene Neale for Breach of Written Contract)

77.     Plaintiff realleges and incorporates by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 50, inclusive, of this Complaint.

78.     The Judgment Debtors, among others, and Plaintiff entered into the Settlement Agreement, dated as of February 10, 2012.  As part of the settlement, the Judgment Debtors executed the Irrevocable Instructions as record and/or beneficial shareholders, directly or indirectly, of RLI, the managing member of RLL.  The Irrevocable Instructions required Levene Neale, as escrow holder, to

distribute to Plaintiff all sums otherwise payable from the Class Action Reserve to a cap of $750,000, which was increased to $1,125,000 upon the Judgment Debtors' default under the Settlement Agreement.  Plaintiff is informed and believes, and on that basis alleges, that Levene Neale became aware of the Settlement Agreement and that the Irrevocable Instructions would issue at the latest on or about February 7, 2012.  Plaintiff is further informed and believes, and on that basis alleges, that Levene Neale received a copy of the Irrevocable Instructions no later than April 6, 2012.

79.     Plaintiff was and continues to be a specifically named intended third party beneficiary of the Irrevocable Instructions.

80.     Notwithstanding and in direct violation of the provisions of the Plan and the Settlement Agreement, and in breach of the Irrevocable Instructions, Levene Neale, at the direction of RLI and their co-Defendants, commenced making distributions from the Class Action Reserve and ignored the Irrevocable Instructions, of which Levene Neale had notice.  Specifically, Levene Neale disbursed at least $6,454,033.89 from the Class Action Reserve.  These disbursements were to assist the Judgment Debtors with avoiding their, Levene Neale's, RLL's, and RLI's obligations to pay to Plaintiff monies disbursed from the Class Action Reserve.

81.     Plaintiff has performed all acts, services, and conditions required by the Irrevocable Instructions to be performed on his part.

82.     Levene Neale breached the Irrevocable Instructions in that RLI caused Levene Neale to distribute, and Levene Neale distributed, moneys from the Class Action Reserve to persons and entities other than Plaintiff that under the Irrevocable Instructions, should have been distributed to Plaintiff.

83.     As a proximate result of Levene Neale's breach of the Irrevocable Instructions, Plaintiff has been damaged in a sum according to proof at trial but in excess of the jurisdictional minimum of this Court.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FIFTH CLAIM FOR RELIEF

### (Against All Defendants for Conversion)

84.     Plaintiff realleges and incorporates herein as though set forth in full the allegations contained in Paragraphs 1 through 50, inclusive, of this Complaint.

85.     By virtue of the Settlement Agreement, the Irrevocable Instructions, and the Plan, Plaintiff obtained an interest in the Class Action Reserve and the right to be paid out of that Reserve.

86.     Plaintiff is informed and believes, and on that basis alleges, that the Defendants, and each of them, wrongfully exercised, and continue to wrongfully exercise, dominion and control over the moneys that should have been distributed to Plaintiff from that Reserve, and have prevented Plaintiff from possessing such moneys, in a manner inconsistent with Plaintiff's rights in and to such moneys.

87.     At all times herein mentioned, Plaintiff was, and still is, entitled to the possession of the moneys that were wrongfully distributed from the Class Action Reserve.

88.     The wrongful conduct of the Defendants in distributing, or causing to be distributed, moneys to themselves and others that should have been distributed to Plaintiff has harmed Plaintiff by depriving Plaintiff of the sum of money according to proof at trial but in excess of the jurisdictional amount of this Court to which Plaintiff is, and at all relevant times was, lawfully entitled.

89.     The wrongful acts of the Defendants alleged above were wanton, malicious, and such Defendant undertook such acts with the intent to defraud, and justify the awarding of exemplary and punitive damages in an amount according to proof at trial.

## SIXTH CLAIM FOR RELIEF

### (Against All Defendants for Money Had and Received)

90.     Plaintiff realleges and incorporates herein as though set forth in full the allegations contained in Paragraphs 1 through 50, inclusive, of this Complaint.

91.     Plaintiff has, and had since the execution of, and pursuant to, the Settlement Agreement and the Irrevocable Instructions, a valid interest in the Class Action Reserve and distributions from that Reserve.

92.     Plaintiff is informed and believes, and on that basis alleges, that despite the existence of Plaintiff's valid interest in the Class Action Reserve and distributions from that Reserve, the Defendants, and each of them, acted in a manner inconsistent with Plaintiff's rights in and to the Class Action Reserve and distributions from the Class Action Reserve by distributing (in the case of Levene Neale) and receiving the distributions or the benefit of the distributions (in the case of all Defendants) that, pursuant to the Settlement Agreement and the Irrevocable Instructions, should have been distributed to Plaintiff.

93.     Plaintiff is informed and believes, and on that basis alleges, that the Defendants received distributions from the Class Action Reserve that Plaintiff should have received, to which the Defendants were not entitled, and to which Plaintiff had a superior right because of Plaintiff's valid interest in the Class Action Reserve and distributions from that Reserve.

94.     Plaintiff is informed and believes, and on that basis alleges, that the recipients of the wrongfully distributed sums did not use any portion of the wrongfully distributed moneys for the benefit of Plaintiff.

95.     As a proximate result of the receipt by the Defendants of the wrongfully distributed moneys, which moneys were intended for the use and benefit of Plaintiff, Plaintiff has suffered damages in an amount to be proven at trial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SEVENTH CLAIM FOR RELIEF

### (Against All Defendants except RLI for Intentional Interference
### with Contract)

96.     Plaintiff realleges and incorporates herein as though set forth in full the allegations contained in Paragraphs 1 through 50, inclusive, of this Complaint.

97.     As to Levene Neale, Plaintiff asserts this Claim in the alternative to the Fourth Claim for Relief for Breach of Contract in the event that it is determined that Levene Neale is not a party to or otherwise bound by the contracts at issue.  As set forth above, the Irrevocable Instructions is a valid contract pertaining to, among other things, the disbursement of funds to Plaintiff from the Class Action Reserve account, of which Levene Neale was the custodian.

98.     Defendants, and each of them, knew of those contracts and knew that they required disbursement of funds to Plaintiff and not to them or their affiliates.

99.     Defendants, and each of them, induced RLI to breach the Irrevocable Instructions by inducing RLI to direct Levene Neale to disburse from the Class Acton Reserve funds owed and payable to Plaintiff.

100.    The conduct of Defendants, and each of them, did in fact prevent and disrupt the performance by RLI and Levene Neale of the Irrevocable Instructions.

101.    The wrongful conduct of the Defendants named in this Claim for Relief in inducing other Defendants to breach contracts by distributing moneys that should have been distributed to Plaintiff instead to others has harmed Plaintiff by depriving Plaintiff of the sums of money wrongfully distributed, according to proof at trial but in excess of the jurisdictional amount of this Court.

102.    Defendants, and each of them, knew or reasonably should have known that, as a result of RLI's breach of the Irrevocable Instructions, Plaintiff would suffer harm in the form of monetary damages and that Plaintiff would file this action and would incur attorneys' fees and costs.  Plaintiff is therefore entitled to recover from the Defendants, jointly and severally, compensatory damages and

damages in the form of necessary loss of time, attorney's fees, and other expenditures suffered or incurred by Plaintiff in this action, to be proved at trial. Defendants' conduct was oppressive and motivated by malice, oppression and fraud in that it was intended by Defendants to cause injury to Plaintiff and was carried on by Defendants with willful and conscious disregard for Plaintiff's rights. As a result, the imposition of exemplary or punitive damages against Defendants is warranted.

103.   The wrongful acts of the Defendants named in this Claim for Relief alleged above were wanton, malicious, and such Defendant undertook such acts with the intent to defraud, and justify the awarding of exemplary and punitive damages in an amount according to proof at trial.

## EIGHTH CLAIM FOR RELIEF

### (Against All Defendants for Fraudulent Transfers and Conversion – Shareholder Derivative)

104.   Plaintiff realleges and incorporates herein as though set forth in full the allegations contained in Paragraphs 1 through 50, inclusive, Paragraphs 58 through 76, inclusive, and Paragraphs 84 through 89, inclusive, of this Complaint.

105.   Plaintiff asserts this Claim derivatively in the right and for the benefit of RLI to redress injuries suffered by RLI as a direct result of the fraudulent transfers and conversion by RLI and Barlava, alleged above.  RLI is named as a nominal party solely in a derivative capacity.  Plaintiff shall serve a true copy of this Complaint on RLI concurrently with, or after, Plaintiff files this Complaint.

106.   Plaintiff will adequately and fairly represent the interests of RLI in enforcing and prosecuting its rights.

107.   Plaintiff is not required to make a demand on RLI to bring this suit because such a demand would be futile.  The members of RLI's Board of Directors

are personally interested in this Claim for Relief and are incapable of considering a demand to bring suit objectively and in a disinterested and independent manner.

108.   As set forth above in the Second, Third, and  Fifth Claims for Relief, the Defendants engaged in statutory and common law constructive and actual fraudulent conveyances and conversion with respect to the funds in the Class Action Reserve.

109.   As a direct and proximate result of the fraudulent transfers and conversion, RLI has been damaged in an amount Plaintiff shall prove at trial, which amount is at least the total value of the cash, the property, and the property interests transferred and/or converted.

## **PRAYER**

WHEREFORE, Plaintiff Howard L. Abselet prays for judgment against the Defendants, and each of them, as follows:

1.   On the First Claim for Relief for Declaratory Relief, against All Defendants,

        a.   A judicial determination and declaration that the Transfers from the Class Action Reserve violated the terms of the Irrevocable Instructions, and the Plan, were actual and/or constructive fraudulent transfers and must be avoided;

        b.   A judicial determination and declaration that the Judgment Debtors were 43.73% shareholders in RLI until (A) they acquired Barlava's shares in RLI, at which time, the Judgment Debtors became 93.46% shareholders in RLI (a transaction that, upon information and belief, Barlava now contests), and (B) Plaintiff purchased all of the Judgment Debtors' shares in RLI (93.46%) at the Execution Sale.

2.      On the Second and Third Claims for Relief for Actual Fraudulent Transfers against All Defendants,

     a.     For avoidance of the Transfers to the extent necessary to satisfy RLI'S obligations to Plaintiff in full;

     b.     For recovery of the property transferred or the value of such property, to the extent necessary to satisfy RLI's obligations to Plaintiff in full;

     c.     For any damages Plaintiff suffered due to the Transfers in a sum according to proof at trial, not to exceed the amount necessary to satisfy RLI's obligations to Plaintiff in full;

     d.     For the issuance of a temporary restraining order, a preliminary injunction, and a permanent injunction restraining the Defendants, their agents, servants, employees, attorneys, and representatives and all those in privity or acting in concert with or on behalf of them, from the transfer of any of the assets of RLI, any trusts of which they were the grantor/settlor and/or a beneficiary, or any entity as to which RLI and/or its insiders have a majority legal or beneficial interest;

     e.     For issuance of an order authorizing Plaintiff and a levying officer to levy on any property that was the subject of the Transfers and to sell same at an execution sale or otherwise in accordance with the California Enforcement of Judgments Law, California Code of Civil Procedure section 680.010 *et seq*.;

     f.     For the appointment of a receiver over the current or transferred assets of RLI;

g.      For imposition of a constructive trust over all of RLI's property, all property wrongfully transferred, and all proceeds of such property; and

h.      For punitive and exemplary damages.

3.      On the Fourth Claim for Relief for Breach of Written Contract against Levene Neale, for damages according to proof at trial;

4.      On the Fifth Claim for Relief for Conversion against All Defendants,

a.      For damages according to proof at trial; and

b.      For punitive and exemplary damages;

5.      On the Sixth Claim for Relief for Money Had and Received against All Defendants, for damages according to proof at trial;

6.      On the Seventh Claim for Relief for Intentional Interference with Contract against All Defendants except RLI,

a.      For damages according to proof at trial, including damages in the form of necessary loss of time, attorney's fees, and other expenditures suffered or incurred by Plaintiff in this action ; and

b.      For punitive and exemplary damages;

c.      For interest on all sums as provided by law;

d.      For costs of suit, including reasonable attorneys' fees; and

e.      For such other further relief as the Court may deem just and proper.

7.      On the Eighth Claim for Relief for Fraudulent Transfers and Conversion – Shareholder Derivative against All Defendants,

a.      For damages according to proof at trial,

b.      For interest on all sums as provided by law;

c.      For costs of suit, including reasonable attorneys' fees; and

d.     For such other further relief as the Court may deem just and proper.

DATED:  August 22, 2016          THE DAVID FIRM®


                                 By:  _/s/ *Henry S. David*
                                      Henry S. David
                                      Attorneys for Plaintiff
                                      HOWARD L. ABSELET


DATED:  August 22, 2016          LAW OFFICE OF ANDREW F. KIM, ESQ., PC


                                 By:  _/s/_ *Andrew F. Kim*
                                      Andrew F. Kim
                                      Attorneys for Plaintiff
                                      HOWARD L. ABSELET

EXHIBIT "1"

Massoud Aaron Yashouafar
Solyman Yashouafar
660 S. Figueroa Street, 24th Floor
Los Angeles, California 90017



_____, 2012



Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Attention: David L. Neale, Juliet Y. Oh

     Re:    Roosevelt Lofts, LLC ("Debtor"); Second Amended Chapter 11 Plan of
          Reorganization (Dated June 20, 2011), as Modified (the "Plan")

Ladies and Gentlemen:

     The undersigned, Massoud Aaron Yashouafar and Solyman Yashouafar, are record and beneficial shareholders, directly or indirectly, of Roosevelt Lofts, Inc. ("RLI"), the managing member of Debtor. Per the Plan, you are the custodian of the Class Action Reserve established and funded under the Plan for the payment of Class 2 Mechanics' Lien Claims. Once all Class 2 Mechanics' Lien Claims have been resolved and paid (either per settlement terms or final adjudication), any cash remaining in the Class Action Reserve is to be distributed to RLI.

     Attached to this letter as Exhibit A is a Settlement Agreement, dated as of February 10, 2012, between, among others, the undersigned, (the "Yashouafar Parties") and Howard L. Abselet (the "Settlement Agreement"). In accordance with Sections 1(b)(2) and 2(a) of the Settlement Agreement, you are hereby irrevocably instructed and directed to disburse to Howard L. Abselet 46.730% (the Yashouafar Parties' interest in RLI) of all funds from the Class Action Reserve otherwise payable to RLI with respect to the Yashouafar Parties' interest from time to time under the Plan. Such disbursements shall be in accordance with the following wire transfer instructions:

          Capital One Bank
          ABA Routing No. ▬▬▬▬▬
          Account No. ▬▬▬▬▬

     This instruction letter remains in full force and effect until such time as you have made aggregate distributions to Mr. Abselet in the amount of $750,000 pursuant hereto; provided,

however, that the aggregate amount of distributions to Mr. Abselet will be increased to $1,125,000 upon your receipt of written notice of an event of default by the undersigned under the Settlement Agreement. Such notice may be furnished by Mr. Abselet or his counsel without the need for any consent, confirmation or acknowledgment from the undersigned.

The undersigned represent and warrant that they have full power and authority to issue this instruction letter with respect to their interests in RLI.

Sincerely,

Massoud Aaron Yashouafar

Solyman Yashouafar

Doc. # PH-634892 v.1

EXHIBIT "2"

MARK A. NEUBAUER (SBN 73728)
REBECCA EDELSON (SBN 150464)
STEPTOE & JOHNSON LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067-5052
Telephone:  (310) 734-3200
Facsimile:(310) 734-3300
Email:   mneubauer@steptoe.com
Email:   redelson@steptoe.com                    CLOSED

Attorneys for Plaintiff
HOWARD L. ABSELET

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD L. ABSELET, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> ALLIANCE LENDING GROUP, INC., a California corporation; SOLYMAN YASHOUAFAR, an individual; MASSOUD AARON YASHOUAFAR, an individual, HAMID JOSEPH NOURMAND, an individual, MALIBU RECONVEYANCE, LLC, a California limited liability company, VAN NUYS PLYWOOD, LLC, a California limited liability company, SODA PARTNERS, LLC, a California limited liability company, and DOES 1-10, inclusive <br><br> Defendants. <br> AND RELATED CROSS-CLAIMS. | Case No.: CV11-00815 JFW (JEMx) <br> Assigned to Hon. John F. Walter <br><br> **SECOND AMENDED JUDGMENT** <br><br> Complaint Filed: 1/27/11 <br> Pretrial Conf. Date:1/27/12,  2/10/12 <br> Trial Date:        Vacated |

Doc. # CC-268796 v.1

Plaintiff Howard L. Abselet ("Abselet") having filed his operative Second Amended Complaint against Defendants Hamid Joseph Nourmand ("Nourmand"), Alliance Lending Group, Inc. ("Alliance"), Solyman Yashouafar ("S-Yashouafar") and Massoud Aaron Yashouafar ("M-Yashouafar"), Malibu Reconveyance, LLC ("Malibu"), Van Nuys Plywood, LLC ("Van Nuys"), and Soda Partners, LLC ("Soda"), Malibu and Van Nuys having filed Cross-Complaints against one another, and Malibu having filed a Third Party Complaint against Third Party Defendant LPS Agency Sales and Posting("LPS"),  IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

**Plaintiff's Claims:**

Based on the stipulation between Plaintiff Abselet and the Borrower Defendants for the entry of Judgment upon the Default of the Borrower Defendants of their obligations under the Settlement Agreement previously approved by this Court, and the Court having found the Borrower Defendants have defaulted on those obligations to Plaintiff Abselet, Judgment is hereby awarded in favor of Plaintiff Abselet and against Defendants Alliance Lending Group, Inc., Solyman Yashouafar and Massoud Aaron Yashouafar, jointly and severally, as follows:

(1)  in the sum of $5,986,580.20 with interest at the rate set forth below commecing on June 9, 2012, plus attorneys' fees and costs in the additional sum of $800,000.00, plus interest on that amount at the rate as set forth below commencing June 27, 2012.

 (2)  Said Defendants are further ordered to pay to Plaintiff Abselet the additional sum of $4,520.00 as attorneys' fees for the cost of the Motion to Enforce the Settlement;

(3) Interest on all of said sums shall accrue at the rate of 6% (six percent) per annum simple interest until paid in full;

Doc. # CC-268796 v.1