Note Changes Made by the Court

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD L. ABSELET, an individual and derivatively on behalf of ROOSEVELT LOFTS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> LEVENE NEALE BENDER YOO & BRILL, LLP, et al., <br><br> Defendants. <br><br> And <br><br> ROOSEVELT LOFTS, INC., a California corporation, <br><br> Nominal defendant <br><br> TI | Case No. 2:16-CV-6263-JFW(JEMx) <br><br> Courtroom: 7A <br> Hon. John F. Walter <br> United States District Judge <br><br> **STATEMENT OF DECISION ON PLAINTIFF HOWARD L. ABSELET'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST HUDSON LABOR SOLUTIONS, INC., RAYMOND YASHOUAFAR AND RODNEY YASHOUAFAR** |

On May 8, 2018, Plaintiff Howard L. Abselet filed a Motion for Partial Summary on his Seventh Claim for Relief for Intentional Interference with Contract (the "Interference Claim") against defendants Hudson Labor Solutions, Inc. ("Hudson"), Raymond Yashouafar ("Raymond") and Rodney Yashouafar ("Rodney") (collectively, the "Hudson Defendants").[1] On May 25, 2018, the Hudson Defendants filed their Oppositions. On June 4, 2018, Plaintiff filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's June 18, 2018 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Uncontroverted Facts

The long history of Solyman Yashouafar's ("Solyman") and Massoud Aaron Yashouafar's ("Massoud") (collectively, the "Judgment Debtors") efforts to fraudulently avoid paying the judgment entered against them and in favor of Plaintiff in 2012 is set forth in several of the Court's previous orders, which are incorporated herein. Specifically, the Court incorporates: (1) the Court's August 10, 2017 Order granting in part and denying in part Levene Neale Bender Yoo & Brill, LLP's

---

[1] In addition, Plaintiff's Motion requests judgment on the remaining portions of the first claim of relief for declaratory relief related to intentional interference with contract as to the Hudson Defendants. Plaintiff has not moved on his claim for punitive damages and, if Plaintiff prevails on this Motion, he states that he intends to proceed to trial on his claim for punitive damages against the Hudson Defendants. (See Plaintiff's Motion, Dkt. 469, p. 2, n. 1).

[2] **To the extent any of these facts are disputed, they are not material to the disposition of this motion. In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.**

("Levene Neale") Motion for Summary Judgment against Plaintiff (Dkt. No. 202); (2) the Court's August 10, 2017 Order granting in part and denying in part the Motion for Partial Summary Judgment of Simon Barlava and Carla Ridge, LLC (the "Barlava Defendants") (Dkt. 201); (3) the Court's November 15, 2017 Order denying the Hudson Defendants' Motion for Partial Summary Judgment Against Plaintiff (Dkt. No. 357); and (4) the Court's November 17, 2017 Order granting Plaintiff's Motion for Partial Summary Judgment against Levene Neale (Dkt. 382).

In addition, the Court finds that the following facts are uncontroverted:

Hudson was formed five and half months after the confirmation of the Plan in the Roosevelt Lofts LLC ("RLL") bankruptcy (*In Re RLL*, U.S. Bk. Ct. C.D.Cal – 1:09-BK-14214 GM (the "RLL BK")). Raymond is the Chief Executive Officer and Secretary and Rodney is the Chief Financial Officer of Hudson. Hudson was never a creditor of RLL or Roosevelt Lofts, Inc. ("RLI"), RLL's sole member and manager. Hudson allegedly provided "employee leasing" services to Encino Corporate Plaza, LP ("ECPLP") – an entity previously owned 100% by the Judgment Debtors – which formerly owned a building on Ventura Boulevard called the Encino Corporate Plaza. Hudson provided no services to RLL, RLI or any family-owned entity other than ECPLP.

After Plaintiff acquired the Judgment Debtors' interests in ECPLP and RLI at an execution sale, this Court held on September 21, 2015 in the action entitled *Abselet v. Alliance Property, et al.*, U.S.D.C. Cal. Case No. 2:11-CV-0815 JFW (JEMx), that the Judgment Debtors and their family members, including Raymond Yashouafar, engaged in "sham" transactions and used shell companies to transfer the Judgment Debtors' assets with the intent to engage in fraudulent transactions.

- "So these are just transactions that, in my view, are not only shams but they're fraudulent transactions. They're done with the specific intent to defraud creditors in this case, and in this case it's the judgment creditor Mr. Abselet."
- "There's no doubt in my mind that these transactions – there's no business justification for these transactions. They're designed solely to defraud Mr. Abselet out of his – out of the money he's entitled to

- under the judgment."
- "I've read the papers, I've looked at the evidence, and my conclusion is that these are fraudulent transfers…."
- "As to the fraudulent transfer, I find that the transfers by the judgment debtors of their interests made with the actual intent to hinder, defraud, delay, and defraud Mr. Abselet who is the judgment creditor in this case."

On March 14, 2016, this Court granted summary judgment in favor of Plaintiff in Plaintiff's fraudulent transfer action against, among others, Raymond, in the action entitled *Abselet v. Solyman Yashouafar, et al*, United States District Court Case No. 2:15-CV-7625 JFW (JEMx), which involved the alleged transfers of stock in ECP Building, Inc. owned by the Judgment Debtors. This Court held, among other things, that "any purported transfer of such stock by the Judgment Debtors to [Raymond and Justin Yashouafar] was a 'sham' and a 'fraudulent transfer.'"

The Court also held that there was a separate fraudulent transfer between ECPLP and Kadima Security Services, Inc. ("Kadima"), which was partially owned by Raymond and Rodney. In the Court's August 5, 2015 Order denying Kadima's *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction, the Court held that the parking lot lease between Kadima and ECPLP relating to the parking garage at Encino Corporate Plaza "is yet another attempt by the Yashouafar family to divert assets from the receivership estate and, ultimately, prevent Plaintiff from collecting any of the over $10 million he is owed by the Judgment Debtors."

On July 13, 2017, the Judgment Debtors' tax preparers produced in the Judgment Debtors' involuntary Chapter 11 bankruptcy case, coordinated case nos. 1:16-BK-12255-GM and 1:16-BK-124098 GM (the "Judgment Debtors' BK"), the Judgment Debtors' tax returns from 2012 through 2015. The Judgment Debtors' tax returns show that the Hudson Defendants paid the Judgment Debtors and their respective spouses $287,078 in purported salary in 2012 and 2013, and those payments were made after the improper $300,000 Class Action Reserve ("CAR") distribution to Hudson. The tax returns also reveal that the Hudson Defendants paid

3
Statement Of Decision

another $110,718 to the Judgment Debtors and their respective spouses in 2014 and 2015. In fact, aside from $13,579 paid to Solyman's wife in 2015 from another source, the Judgment Debtors and their respective spouses reported no income on their tax returns other than the payments they received from the Hudson Defendants. Incredibly, Massoud testified under oath on November 20, 2015 that he did not know where his wife worked or what she got paid (while they were both receiving their only income from the Hudson Defendants and filing joint tax returns), and Solyman denied under oath on December 1, 2015 that he ever worked for Hudson.

### B. Procedural History

As relevant to Plaintiff's Motion, Plaintiff alleges a claim for interference with contract based on the Hudson Defendants' interference with the Judgment Debtors' and Levene Neale's performance of their obligations under the Settlement Agreement and the Irrevocable Instructions. Plaintiff claims that the Hudson Defendants and the Judgment Debtors used Hudson as a shell and caused Levene Neale to pay to Hudson $300,000 with the intent that the Hudson Defendants would simply transfer those funds to the Judgment Debtors in furtherance of their efforts to defraud Plaintiff. Complaint, ¶¶96-102. On October 13, 2016, Hudson and Rodney filed their Answer. On August 18, 2017, Raymond filed his Answer.

## II. LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. Id. at 250; Fed. R. Civ. P. 56(c), (e); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory

allegations unsupported by factual data"). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." American International Group, Inc. v. American International Bank, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. "This requires evidence, not speculation." Meade v. Cedarapids, Inc., 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. See Hanon v. Dataproducts Corp., 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. See Anderson, 477 U.S. at 249-50; TW/Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." American International Group, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint'" Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).

### III. DISCUSSION

Plaintiff contends that the undisputed facts show that the Hudson Defendants interfered with the Judgment Debtors' and Levene Neale's performance of the Settlement Agreement among the Judgment Debtors and their entity, Alliance

Lending Group, Inc., and Plaintiff and the Irrevocable Instructions by using Hudson as a "shell" company to secretly receive a March 20, 2012 $300,000 distribution from the CAR knowing that Hudson was not entitled to any disbursement. Plaintiff claims that the Hudson Defendants then funneled that money and much more to the Judgment Debtors and their respective spouses after the effective date, February 10, 2012, of the Settlement Agreement. As a result, Plaintiff claims damages as a result of the Hudson Defendants' interference, including pre-judgment interest calculated through the date of the hearing on this Motion, totally $486,325.37.

### A. **Plaintiff is Entitled to Summary Judgment on His Seventh Claim for Relief for Interference With Contract**

The elements of a claim for interference with contract are: (1) a valid contract between Plaintiff and a third party (in this case, the contract is between Judgment Debtors, Plaintiff and Levene Neale); (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contract; (4) actual breach of the contract; and (5) damages. Pacific Gas & Electric Co. v. Bear Stearns, & Co., 50 Cal.3d 1118, 1126 (1990).

#### 1. **There is a Valid Contract**

The Hudson Defendants concede for purposes of Plaintiff's Motion, as the Court has held in several prior orders, that there is a valid contract. Dkt. 477 (Opposition), p. 11:4-12; see also Dkt. Nos. 201, 202 and 382.

#### 2. **The Hudson Defendants Interfered With the Contract**

With respect to the interference claim, this Court previously held as follows:

> [T]he Court agrees with Judge Mund's finding that the distributions to the Barlava Defendants and others were improper and that, to the extent those parties had notice that the distributions were improper, those parties would also [be] liable to Plaintiff for their interference with Plaintiff's right to receive the money he was entitled to under the Plan and the [Irrevocable] Instructions. Therefore, the Court concludes that

Plaintiff's interference with contract claim is based upon a valid contract.

Dkt. 201. The Hudson Defendants argue that they had no notice of the Settlement Agreement or the Irrevocable Instructions and, even if they did, they did not interfere with that contract and Raymond and Rodney never actually receive a distribution from the CAR.

However, the Court concludes that Plaintiff need not prove that the Hudson Defendants received any money to prevail on his Seventh Claim against those defendants. Instead, Plaintiff only needs to prove that the Hudson Defendants interfered with the Settlement Agreement and Irrevocable Instructions and that Plaintiff did not receive the money to which he was entitled as a result of that interference. Whether the Hudson Defendants received any money as a result of the improper distribution is irrelevant. Pacific Gas & Electric Co, 50 Cal.3d at 1126.

### 3. The Hudson Defendants and Judgment Debtors Created Hudson to Defraud Plaintiff and Cannot Claim They Did Not Know About the Settlement Agreement and Irrevocable Instructions

Plaintiff alleges and has submitted uncontroverted evidence demonstrating that Raymond and Rodney and the Judgment Debtors created Hudson as part of a scheme to conceal the fact that the distribution from the CAR paid to Hudson was, in fact, received by the Judgment Debtors in violation of the Settlement Agreement and the Irrevocable Instructions.

The Hudson Defendants argue that they could not have interfered with the contract in March 2012 because the Irrevocable Instructions were not delivered to Levene Neale until April 2012. However, the Judgment Debtors and Plaintiff, among others, entered into the Settlement Agreement as of February 10, 2012. After that date, each time the Judgment Debtors authorized a distributions from the CAR without first making the agreed upon distributions to Plaintiff pursuant to the

Settlement Agreement and the Irrevocable Instructions, they intentionally breached the Settlement Agreement and the Irrevocable Instructions. In addition, the Court concludes that Hudson is the *alter ego* of Raymond and Rodney as well as the Judgment Debtors and they used Hudson as a shell to disguise or hide the transfer of funds to the Judgment Debtors. The purpose of the *alter ego* doctrine is to afford protection to creditors, or those to whom the corporation may otherwise be liable, where some conduct amounting to bad faith makes it inequitable for the equitable owner of a corporation to hide behind its corporate veil. Roman Catholic Archbishop of San Francisco v. Superior Court, 15 Cal. App. 3d 405, 412 (1971); Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 842 (1962). "The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." Sonora Diamond Corp. v. Sup. Ct., 83 Cal. App. 4th 523, 538 (2000); Associated Vendors, 210 Cal. App. 2d at 842. "Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. . . . [T]he corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require." Leek v. Cooper, 194 Cal. App. 4th 399, 411 (2011) (quoting Sonora Diamond, 83 Cal. App. 4th at 538; Mesler v. Bragg Management Co., 39 Cal. 3d 290, 301 (1985)).

The alter ego doctrine requires Plaintiff to prove: (1) that "the corporation is not only influenced and governed by that person, but that there is such a <u>unity of interest and ownership</u> that the individuality, or separateness, of such person and corporation has ceased" (emphasis added); and (2) "the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." Minifie v. Rowley, 187 Cal. 481, 487 (1921); see also Talbot v. Fresno-Pacific Corp., 181 Cal. App. 2d 425, 431 (1960); Temple v. Bodega Bay Fisheries, Inc., 180 Cal. App. 2d 279, 283

(1960); see also Leek, 194 Cal. App. 4th at 415; Vasey v. Cal. Dance Co., 70 Cal. App. 3d 742, 749 (1977).

Courts consider a variety of factors in determining whether an *alter ego* relationship exists. Associated Vendors, 210 Cal. App. 2d at 838-840; see also Zoran Corp. v. Chen, 185 Cal. App. 4th 799, 811-12 (2010). The uncontroverted facts show that the Judgment Debtors and the Hudson Defendants have met the majority if not all of the Associated Vendor factors. Specifically, Plaintiff has demonstrated that the Hudson Defendants: (1) "[c]ommingl[ed] funds and other assets"; (2) "fail[ed] to segregate funds of the separate entities"; (3) "diver[ted with authorization]corporate funds or assets to other than corporate uses"; (4) "treat[ed] by … individuals of [corporate] assets …. as [their] own"; (11) "… own…all of the stock in a corporation …"; (13) "…employ[ed] … the same employees and/or attorney"; (14) "…fail[ed] to adequately capitalize a corporation"; (15) claim to have no "corporate assets and [to be] undercapitalize[d]"; (16) "use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation"; (17) "conceal[ed] and misrepresent[ed] … the identity of the responsible ownership, management and financial interest, or concealment of personal business activities"; (18) "…disregarded … legal formalities and the fail[ed] to maintain arm's length relationships among related entities"; (19) "… use[d] of the corporate entity to procure labor, services or merchandise for another person or entity"; (20) "…divert[ed] assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors"; (21) "… manipulate[ed the] assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another"; (22) "…contract[ed] with another with intent to avoid performance by use of a corporate entity as a shield against personal liability"; (23) "… use[d the]…corporation as a subterfuge of illegal transactions"; and (24) "…form[ed] and use[d] of a corporation to transfer to it the existing liability of another person or entity." Associated Vendors, Inc., 210 Cal. App. 2d at 838-840.

Therefore, the Hudson Defendants' claim that they did not have proper notice of the Settlement Agreement or Irrevocable Instructions borders on the frivolous. The evidence demonstrates that the Hudson Defendants were aware of their fathers' settlement with Plaintiff and that they *intended* to transfer the money they fraudulently received from the CAR to the Judgment Debtors to assist the Judgment Debtors in their scheme to defraud Plaintiff out of the money they had pledged to pay him in the Settlement Agreement.

It is undisputed that the Judgment Debtors pledged the CAR funds as collateral for the Settlement Agreement, and that those funds were supposed to be available to pay Plaintiff pursuant to the Irrevocable Instructions and this pledge was well known to the Hudson Defendants and the Judgment Debtors. It is also cannot be seriously disputed that Hudson had no right to any payment from the CAR or from RLI, and the Hudson Defendants and the Judgment Debtors were fully aware that any CAR payment to the Hudson Defendants that was subsequently transferred to the Judgment Debtors was done in furtherance of the Judgment Debtors' efforts to fraudulently avoid their obligations under the Settlement Agreement. The Court notes that Raymond produced what he claimed to be the only document in existence evidencing the March 2012 distribution – a bank statement showing receipt of the distribution to Hudson from the CAR – and produced no invoices for services allegedly rendered or any other documents at all to justify the distribution. Although there is no evidence that Hudson was entitled to a payment from the CAR, on March 30, 2012, the Hudson Defendants did not hesitate to accept a payment of $300,000 from the CAR and thereafter transferred that money to the Judgment Debtors and their respective spouses.

### 4. **Plaintiff Suffered Specifically Identifiable and Readily Calculable Damages**

Plaintiff's damages consist of the $300,000 wrongful distribution from the CAR made by Levene Neale to the Hudson Defendants, plus prejudgment interest at

the applicable rate of 10% per annum. Accordingly, the total amount of Plaintiff's damages calculated through June 4, 2018 is $486,325.37.

**B.   The Statute Of Limitations Does Not Bar Any Of Plaintiff's Claims**

"A Plaintiff must bring a claim within the limitations period after the accrual of the cause of action. In other words, statutes of limitations do not begin to run until a cause of action accrues." Fox v Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (2005) (internal citations omitted). Thus, in general, a cause of action accrues when it is "complete with all of its elements.'" Id.; Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999).

**1.   The Statute Of Limitation For Intentional Interference Claims Is Three Years**

The Hudson Defendants contend that the statute of limitations for the Interference Claim is two years. However, the two-year statute of limitations applies only in the *absence* of allegations of fraud. Romano v. Wilver Ellis & Co., 82 Cal. App. 2d 670 (1947). A three-year statute of limitations applies in light of the Hudson Defendants' involvement in the scheme to defraud Plaintiff. Id.

**2.   The Discovery Rule Applies to Interference Claims**

The "discovery rule" applies to interference claims. See, e.g., Norgart, 21 Cal. 4th at 397-98 (discovery rule generally); April Enterprises, Inc. v. KTTV, 147 Cal. App. 3d 805, 831-32 (1983); Goldstein v. Kirby, 2012 Cal. App. Unpub. LEXIS 5789, *26 (holding that discovery rule may apply to interference with contract claims); Griffin v. Aerosat USA, 2010 U.S. Dist. LEXIS 118610, *12-13 (D. Az. 2010) (holding that interference with contract claim accrues upon discovery of breach, under Arizona law).

In this case, the earliest date that the statute of limitations began to run on the Interference Claim against the Hudson Defendants was August 27, 2015, the date of Raymond's deposition and the date Plaintiff first discovered that the Hudson Defendants had engaged in sham transactions and fraudulent transfers relating to the

fraudulent distribution from the CAR to Hudson. Kim Decl., Exh. "4" (Raymond Yashouafar Deposition). Prior to Raymond's deposition, Plaintiff only knew that a distribution from the CAR had been made to Hudson and that Raymond and Rodney appeared to own Hudson. Plaintiff did not know that the Hudson Defendants and the Judgment Debtors had used Hudson to conceal the fact that the distribution from the CAR was actually received by the Judgment Debtors. Plaintiff filed his Complaint on August 22, 2016, well within three years of the August 27, 2015 date.

Accordingly, Plaintiff's Intentional Interference claim is not barred by the statute of limitations.

## IV. CONCLUSION

For all the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment.

IT IS SO ORDERED.

DATED: June 18, 2018

_____
The Hon. John F. Walter
United States District Court Judge